[Crim. No. 3794.  Second Dist., Div. One.  Aug. 24, 1944.]

THE PEOPLE, Respondent, v. MRS. RENE PARKS et al.,
Defendants; JAMES MARINO, Appellant.

Harry Margid for Appellant.

Robert W. Kenny, Attorney General, and T. G. Negrich,
Deputy Attorney General, for Respondent.

YORK, P. J.—Defendants were jointly accused in an information containing two counts (1) of a violation of subdivision 2, section 337a, Penal Code, in that on August 21, 1943, they did unlawfully keep and occupy a room in a building located at 348½ North Gardner, in the county of Los Angeles, with papers, apparatus, device and paraphernalia, for the purpose of recording and registering bets on horse races; and (2) of a violation of subdivision 4, section 337a, Penal Code, in that on the same day they feloniously recorded and registered bets on horse races.

A jury trial being duly waived and the People's case having been submitted upon the transcript of the preliminary examination, the court found "each defendant 'Guilty' as

charged in Count 1 of the information, and 'Not Guilty' as charged in Count 2.'' Defendant Parks was granted probation and the application for probation of defendant Marino was denied.

From the judgment of conviction which was thereafter entered against him, defendant Marino has taken this appeal, contending that the evidence is legally insufficient to support the judgment.

The first witness was Officer Fisk of the Los Angeles Police Department, attached to Administrative Vice Division, who, accompanied by Officer Smith, arrested the defendants at 348½ North Gardner Street at approximately 2:53 p. m. on August 21, 1943. This witness testified that the premises in question were improved with a four-flat building, two flats upstairs and two flats down; that he knocked on the door and saw defendant Parks in the hall; that he called to her to open the door stating that he was a police officer, whereupon defendant Parks turned and went towards the front of the house; that the witness then broke the glass window and crawled into the kitchen; that on the kitchen table and on the floor he found certain papers (Exhibit A) and on the kitchen table he found two California Turf Digests dated August 21, 1943 (Exhibits B and C). That there were two telephones in the apartment which consisted of a bedroom in the back, a bathroom, a kitchen, a living room and a dining room; that when he went from the kitchen into the living room he saw a man's hat on the top of the sofa and a man's coat on the back of a dining room chair, also a woman's suit coat ''over the man's coat on the same chair. After searching the premises, I went to the apartment next door—the other flat upstairs'' which was number 346½, on the south side of the same building; that the screen door at the back of 346½ was open and ''I walked through this door and I came —— the front part of the house, and I saw both of the defendants seated, and as they looked in my direction both started to run, and I took both of them into custody and took them back to 348½ and called Officer Smith, who came up into the apartment.'' That one of the telephones was connected but the cord of the other had been pulled from the wall; that he reinstated that cord and then asked appellant Marino if there were any more papers such as People's Exhibit A, and he replied that ''those were all the papers''; that upon fur-

ther search other similar papers were found crumpled up in a large vase in the dining room (Exhibit D); that a daily racing form (Exhibit E) dated Saturday, August 21, 1943, was found by the officers upon "a chair in the kitchen next to the table upon which the telephone and People's Exhibits A, B and C were found"; that the telephones were in operation; that defendant Parks went into the living room and took her purse from underneath the sofa and brought it back into the dining room; that she then showed the witness her driver's license with her name on it and other personal papers; that said defendant then put on her jacket. Also, that just before leaving the apartment with the officers, appellant "took the hat down from the top of the divan and put it on his head and then put the coat on"; that in appellant's shirt pocket was a piece of paper offered in evidence as Exhibit F.

Officer Fisk was then qualified as an expert on bookmaking paraphernalia and stated that betting markers, scratch sheets, rundown sheets, racing forms, collection sheets and telephones are commonly used by bookmakers in the county of Los Angeles; that Exhibits A and D, hereinbefore referred to, were betting markers used "to record a bet upon horses running at a race track"; that Exhibits C and B were "commonly known as rundown sheets and a scratch sheet," and were used "to record the entries of horses running throughout the United States on the particular day, and to record the handicaps and post positions and post times and other racing information"; that Exhibit E (a daily racing form) is used to record "the entries of various race tracks throughout the United States, and gives their past performance and other racing information." The witness Fisk, proceeded to describe the system used and the manner in which bets on horse racing are commonly recorded. He also testified that Exhibit F is commonly known as a collection sheet and contains "names of agents or the amount of money either owed or to be collected from them." This witness stated in detail the significance of the figures and symbols appearing on Exhibit A and said that he made a comparison of the numbers appearing on the betting markers, Exhibits A and D, with the numbers on Exhibit C, the scratch sheet, and found "that the numbers I compared with entered on the date of the arrest August 21, 1943 . . . at various race tracks throughout the United

States"; that while at the premises in question, the witness asked defendant Parks for her name and at first she gave it as "Pat Parker," but when he asked for and she produced her identification, she told him her name was "Rene Parks"; that after the arrest said witness had a conversation with appellant Marino during which he asked appellant how long he had been bookmaking at this place, and appellant replied: "This is the first day, the first day I have been here." Said witness also had a conversation with defendant Parks after her arrest regarding which he stated: "I asked the defendant Parks why it was when I knocked at the door and told her I was a police officer that she ran to the front of the house, and she told me she didn't hear me say I was a police officer, and she was afraid, and she knew she was there when she should not be there, and that is the reason why she left the front of the apartment."

Officer Joseph H. Smith testified he was attached to the Administrative Vice Division of the Los Angeles Police Department and on August 21, 1943, he participated with Officer Fisk in the arrest of defendant Parks and appellant Marino; that after he entered the premises at 348½ North Gardner the telephone rang about 15 or 20 times; that he answered and made notes of the conversations, among them being two to the following effect: ". . . at 3:02 a man's voice said, 'This is Ace', and he said, 'I want Songspinner in the 8th race at Washington, two to win, place and show.' . . . at 3:04 p. m. a man's voice by the name of 'T' asked for Pat, and I told him at that time that Pat wasn't there, and this was Jimmy, and he said, 'In the 7th race at Washington give me Silent Julie, two to win'." That an examination by the witness of the scratch sheet (Exhibit D) disclosed that the horses named in the various conversations were running on that day at the tracks specified.

A card bearing the name "James Marino" was marked People's Exhibit G for identification, it being stipulated that such exhibit was an exemplar of appellant's handwriting and that Exhibit H was an exemplar of the handwriting of defendant Parks. A handwriting expert attached to the Police Department examined Exhibits A, B, C, D, E and F, and found the handwriting of more than one person on Exhibits B and C, and on A and D; that there were two different

types of handwriting and these two types were found by him on Exhibits G and H.

Appellant urges that the information charges that the offense was committed at 348½ North Gardner Street in the county of Los Angeles, while the evidence shows that the books, papers and paraphernalia were found in a room at 348½ North Sycamore Street; and that no witness testified that appellant was observed at any time in either the room on Gardner Street or in the room on Sycamore.

Apparently, appellant has reference to the testimony of Officer Fisk to the following effect: ''Q. Where and when was the arrest made? A. At 248½ North Sycamore—348½ North Sycamore. Q. Near North Gardner and Sycamore. Mr. A. J. Chotiner: Just a minute; who is testifying? A. *It is Gardner——* on August 24, 1943, at approximately 2:53 P.M. The Court: You are sure it was the 24th? A. No; the *21st.*'' (Italics added.)

*Officer Smith* testified as follows: ''Q. On August 21, 1943, did you participate with Officer Fisk in the arrest of these defendants? A. I did. Q. Did you enter the apartment at 348½ North Gardner? A. I did.''

This testimony definitely established the situs of the offense at 348½ North Gardner Street.

While appellant was found by the officers in an adjoining flat at 346½ North Gardner, he had left his hat and his coat at 348½, which articles of apparel he reclaimed when he was leaving the premises after his arrest. In the pocket of his shirt the officers found Exhibit F, a collection sheet, and it was testified by an expert on that subject that the handwriting on this document was the same as that on Exhibit G which, it was stipulated, was an exemplar of appellant's handwriting. His writing also appeared on various other documents found on the premises. In addition to the various papers and other paraphernalia commonly used in the practice of bookmaking, the officers found two telephones in the flat at 348½ North Gardner, and they answered several telephone calls of patrons seeking to place bets on horses running at race tracks in the United States on the day in question. Moreover, appellant stated to the officers: ''This is the first day, the first day I have been here.''

From these established facts the trial court could reasonably infer that appellant kept and occupied the premises

at 348½ North Gardner for the purpose of recording and registering bets on horse races in violation of subdivision 2, section 337a, Penal Code.

As was stated in *People* v. *Kabakoff,* 45 Cal.App.2d 170, 173 [113 P.2d 760]: "It is the law that when the *corpus delicti* of a crime has been established, in order to justify a conviction of the accused, it is necessary only to prove his participation in the crime. . . . It is not our duty to retry the case and to make inferences from the facts proved. That is the function of the trial court. The duty of the appellate court is to decide only whether upon the face of the evidence it can be held that sufficient facts could not have been found to warrant the inference of guilt. (*People* v. *Newland,* 15 Cal.2d 678 [104 P.2d 778].) To warrant a reversal of the judgment on the ground of insufficiency of the evidence, we must be convinced that upon no hypothesis is there sufficient substantial evidence to support the conclusion reached by the trial court. (*Ibid.*)"

In *People* v. *Newland, supra,* at page 685, it was stated: ". . . the decision whether there is sufficient evidence to support the judgment of conviction must depend upon the circumstances of each case."

For the reasons stated, the judgment is affirmed.

White, J., concurred.

DORAN, J.—I concur, with the reservation however that the question as to whether the testimony of Officer Joseph H. Smith, relating to the telephone conversations, is hearsay, is not decided. The question was not raised on appeal, nor was there any objection to the introduction of such evidence at the trial.